**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony Cervi,<br><br>           Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>           Defendant. | No. CV-20-02056-PHX-SPL<br><br>**ORDER** |

Plaintiff Anthony Cervi seeks judicial review of the denial of his application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). Before the Court are Plaintiff's Opening Brief (Doc. 23), Defendant Commissioner of Social Security Administration's Answering Brief (Doc. 27), Plaintiff's Reply Brief (Doc. 28), and the Administrative Record (Doc. 20). Upon review, the Court reverses and remands the Administrative Law Judge's decision (AR[1] at 10–29).

**I.     BACKGROUND**

On September 29, 2017, Plaintiff filed a Title II application for disability insurance benefits, alleging a period of disability beginning on June 7, 2017. (AR at 13). His claim was initially denied on March 14, 2018, and again upon reconsideration on July 10, 2018. (*Id.*). Plaintiff testified at an administrative hearing on February 24, 2020 (AR at 38–78),

---

[1] Administrative Record (*see* Doc. 20).

after which the Administrative Law Judge ("ALJ") found Plaintiff was not disabled from June 7, 2017 through March 18, 2020 (AR at 10–29). On July 24, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the agency's final decision. (AR at 1).

The Court has reviewed the medical evidence in its entirety and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following medically determinable impairments: multilevel degenerative disc disease, obesity, disseminated idiopathic skeletal hyperostosis ("DISH"), bilateral knee disorder, bilateral carpal tunnel syndrome, depressive disorder, and anxiety disorder. (AR at 16). Ultimately, the ALJ concluded that Plaintiff was not disabled—under sections 216(i) and 223(d) of the Social Security Act—from June 7, 2017 through the date of the decision, March 18, 2020. (AR at 29).

## II. LEGAL STANDARD

A person is considered "disabled" for the purpose of receiving social security benefits if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Id*. To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*. (citation omitted). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the

ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520(a)). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Id*. At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in the regulations.[2] § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id*. If not, the ALJ determines the claimant's residual functional capacity ("RFC"). §§ 404.1520(e), 416.920(e). At step four, the ALJ determines whether the claimant's RFC precludes her from performing her past relevant work. § 404.1520(a)(4)(iv). If so, the ALJ proceeds to the fifth and final step, where they determine whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id*.

## III.   ANALYSIS

Plaintiff argues that the ALJ erred by (1) discrediting the medical opinions of Navjot Rakkar, M.D., and Robert C. Waldrip, M.D. (Doc. 23 at 11–20), and (2) discounting Plaintiff's subjective symptom testimony (*Id.* at 20–25). Plaintiff further argues the case should be remanded for a computation of benefits, rather than for further proceedings. (*Id.* at 25). For the following reasons, the Court reverses the ALJ's decision and remands the case for further proceedings.

---

[2] The impairments "listed in the regulations" are found in Appendix 1 to Subpart P of 20 C.F.R. Part 404.

- 3 -

### A. Medical Opinions

Plaintiff argues that the ALJ erred in rejecting the medical opinions of Dr. Rakkar and Dr. Waldrip. (*Id.* at 11–20). Previously, the Ninth Circuit recognized "a hierarchy among the sources of medical opinions." *Singer v. Comm'r of Soc. Sec. Admin.*, No. CV-18-01767-PHX-JJT, 2019 WL 9089997, at *2 (D. Ariz. Oct. 11, 2019) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)). This hierarchy was known as the treating physician rule, which generally afforded greater weight to the opinions of treating physicians. *Orn*, 495 F.3d at 632; *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001). "In March of 2017, The Social Security Administration ("SSA") amended their regulations to abrogate the treating physician rule, among other changes." *Alonzo v. Comm'r of Soc. Sec. Admin.*, No. CV-18-08317-PCT-JZB, 2020 WL 1000024, at *3 (D. Ariz. Mar. 2, 2020) (citation omitted). The new regulations apply to claims filed on or after March 27, 2017, and provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The new regulations require the ALJ to articulate how persuasive each medical opinion is according to several enumerated factors, including (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. §§ 404.1520c(a)–(c), 416.920c(a)–(c). The most important factors in evaluating an opinion's persuasiveness are the first two: supportability and consistency. §§ 404.1520c(a), 416.920c(a).

The parties disagree as to whether the Ninth Circuit's "clear and convincing" and "specific, legitimate" standards for rejecting the opinion of a treating medical source survived the amendments to the regulations. (Docs. 23 at 11–15 & 27 at 9–11). Courts in this Circuit and District have also disagreed on the issue. *See Tillman v. Comm'r of Soc. Sec. Admin.*, No. CV-20-01551-PHX-SPL, 2022 WL 58685, at *4 (D. Ariz. Jan. 6, 2022) (listing cases). After considering the possible standards in *Tillman*, this Court concluded that it would "defer to the SSA's 2017 regulations and assess whether the ALJ's reasoning

regarding the persuasiveness of each opinion is supported by substantial evidence." *Id.* (citing *Orn*, 495 F.3d at 630; 42 U.S.C. § 405). The Court will do the same here.[3]

### 1. Dr. Rakkar

In a series of opinions dated between January 2, 2018 and December 23, 2019, Dr. Rakkar concluded that Plaintiff was limited to less than sedentary work. (AR at 505–06, 765–66, 767–69 & 936–37). On January 2, 2018, Dr. Rakkar noted that Plaintiff's impairments precluded an eight-hour workday. (AR at 505). He noted significant neck, leg, and back pain and that Plaintiff was limited to less than two hours of sitting, standing, and walking per day. (*Id.*). He also opined that Plaintiff could lift and carry less than ten pounds, and that he could only occasionally bend, reach, and stoop. (*Id.*). Dr. Rakkar concluded that these limitations would cause Plaintiff to miss six or more days of work per month. (AR at 506). On July 12, 2018, Dr. Rakkar referred to the January 2, 2018 assessment and found no changes to Plaintiff's impairments and limitations. (AR at 767). On May 8, 2019, Dr. Rakkar again noted that Plaintiff's impairments precluded an eight-hour workday and reasserted the same limitations as in the 2018 assessments. (AR at 765). On December 23, 2019, Dr. Rakkar stated that there were "no changes since last exam," again reaffirming Plaintiff's previously identified limitations. (AR at 936).

The ALJ found Dr. Rakkar's opinions unpersuasive because they were "extreme" and "not substantially supported by or consistent with clinical findings in the record or the objective medical evidence of record." (AR at 26–27). The ALJ then pointed out instances in the record that the ALJ found to be "not substantially consistent" with Dr. Rakkar's

---

[3] The Court notes that Defendant failed to address any of Plaintiff's Opening Brief arguments related to the alleged error by the ALJ in discrediting medical opinions. Instead, Defendant makes only the conclusory assertion that the ALJ "addressed the supportability and consistency factors" in evaluating the medical opinions and that the ALJ "cites to substantial evidence in support of her findings." (Doc. 27 at 11).

As Plaintiff notes, the Court could find this failure to respond to be a concession of the issue by Defendant. *See, e.g.*, *Landeros Zamora v. Comm'r of Soc. Sec. Admin.*, No. CV-19-05119-PHX-DLR, 2020 WL 5810060, at *3 (D. Ariz. Sept. 30, 2020) (presuming the plaintiff's allegations of ALJ error to be meritorious where the defendant failed to respond to the plaintiff's arguments). However, because the Court would nonetheless find error in the ALJ's decision on its own, the Court will address the issue anyway.

findings. Specifically, the ALJ pointed to: a March 2018 physical examination (AR at 939) which noted "no tenderness" in Plaintiff's back; a September 2019 examination (AR at 906) in which Plaintiff was found to have a reduced range of motion in his lower back; and a December 2019 physical examination (AR at 921) which noted that Plaintiff had a decreased range of motion in his cervical spine, decreased extension due to pain in his lumbar spine, and limited range of motion secondary to pain in his thoracic spine. (AR at 26–27). The ALJ also found that Dr. Rakkar's "own objective/clinical findings/treatment notes" failed to substantially support his opinions, pointing to a September 2017 treatment note by Dr. Rakkar (AR at 512) indicating—among other things—that Plaintiff was not in acute distress, had no edema, clubbing, or cyanosis, that he retained full muscle strength, that he had a normal gait, and that he had some tenderness in the C-spine and lower back with a slightly limited range of motion. (AR at 27).

The ALJ fails to meaningfully explain *how* these findings were "not substantially consistent" with Dr. Rakkar's opinions. Instead, the ALJ merely cherry-picks other examination notes from the record and plainly asserts that they were inconsistent with Dr. Rakkar's opinion. *See Toni D. v. Saul*, No. 3:19-cv-820-SI, 2020 WL 1923161, at *6 (D. Or. Apr. 21, 2020) ("[A]n ALJ may not simply cherry-pick evidence to show that a claimant is not disabled; rather, the ALJ must consider the evidence as a whole in arriving at a conclusion based on substantial evidence. . . . The ALJ cherry-picked statements in Plaintiff's medical records that she presented in no acute distress while ignoring statements in those same chart notes describing ongoing, intense back pain."). This failure is particularly notable because the examinations and treatment notes to which the ALJ refers could plausibly be read to *support* the limitations Dr. Rakkar found—after all, each of these allegedly inconsistent examinations nonetheless noted back pain and decreased ranges of motion. *See Lopez v. Colvin*, 194 F. Supp. 3d 903, 915 (D. Ariz. 2016) ("It is true that Dr. Sayegh's notes consistently report a normal musculoskeletal exam, except for bilateral knee pain, general myalgia, and decreased range of motion of the lumbar and cervical spine. But the ALJ does not explain why bilateral knee pain, general myalgia, and

decreased range of motion of the lumbar and cervical spine are insufficient to support the limitations assessed in Dr. Sayegh's opinions."). Without a more substantive explanation from the ALJ—namely, a meaningful comparison of Dr. Rakkar's opinions with the other medical evidence that shows *how* they are inconsistent with one another—this Court cannot find that the ALJ's discrediting of Dr. Rakkar's opinions is supported by substantial evidence. *Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014) ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion."). This Court finds that the ALJ's reasoning regarding the persuasiveness of Dr. Rakkar's opinion is not supported by substantial evidence, and that the ALJ therefore erred in discrediting his opinion.[4]

### 2.     *Dr. Waldrip*

In an opinion dated October 16, 2018, Dr. Waldrip opined that Plaintiff was limited to less than sedentary work. Dr. Waldrip noted that Plaintiff presented for neck and lower back pain. (AR at 742). The pain was described as throbbing, penetrating, constant, and incapacitating. (*Id.*). The pain was exacerbated by activity and changes of position. (*Id.*).

---

[4] The ALJ also apparently based his discrediting of Dr. Rakkar's opinion on two other bases: (i) that the limitations noted by Dr. Rakkar conflicted with Plaintiff's daily activities, and (ii) that Dr. Rakkar's opinions were merely "checked boxes on a form" and were accompanied by only minimal explanation. (AR at 27). The Court does not find either basis to constitute substantial evidence supporting the ALJ's discrediting of Dr. Rakkar's opinions.

To the first, the ALJ failed to meaningfully explain *how* Plaintiff's daily activities conflicted with the limitations noted by Dr. Rakkar. Instead, the ALJ merely asserts that Plaintiff would be "unable to perform his admitted activities of daily living or drive" if the limitations noted by Dr. Rakkar were true. This bald assertion falls short of the substantial evidence requirement.

As to the second, the Ninth Circuit has specifically found that "there is no authority that a 'check-the-box' form is any less reliable than any other type of form." *Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017) (citing *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (holding that, even where physician used check-the-box form and "did not provide comments to support his answers," the ALJ "still could not reject those responses without clear and convincing reasons for doing so")).

- 7 -

The back pain specifically was exacerbated by lumbar flexion, lumbar extension, and standing or walking, and it moderately limited Plaintiff's activities. (*Id.*). Plaintiff rated the neck and back pain as an eight or nine on a ten-point scale. (*Id.*). Later in the report, Dr. Waldrip discusses the history of Plaintiff's neck and back pain, and notes that Plaintiff was reporting the pain to be "10x worse than what it was previously." (AR at 743). Dr. Waldrip reviewed X-rays and identified degenerative changes in Plaintiff's cervical spine; in comparing them to 2015 X-rays, he noted that "there does appear to be advancement of maturation of the osteophytes." (*Id.*). Dr. Waldrip concluded that Plaintiff "is most likely unable to be employed in any matter" and "is a good candidate for [disability]" because of his ongoing and advancing condition. (*Id.*).

The ALJ found Dr. Waldrip's October 2018 opinion unpersuasive because it "is not substantially supported by Dr. Waldrip's clinical findings." (AR at 27). Specifically, the ALJ concluded that two of Dr. Waldrip's findings did "not substantially support" the "extreme" limitations found by Dr. Waldrip: (i) that Plaintiff "walks with a cane and has a problem with ambulation" and (ii) that Plaintiff had "a diffuse pattern of tenderness throughout the cervical, thoracic, and into the lumbar region, consistent with the diffuse pattern of degenerative process as identified." (AR at 28). The Court is uncertain how either of these findings "do not substantially support" Dr. Waldrip's opinion and the ALJ fails to provide any further explanation. If anything, these two findings could plausibly *support* Dr. Waldrip's conclusion that Plaintiff was significantly limited by his neck and back pain.

The ALJ also found Dr. Waldrip's opinion unpersuasive because he "essentially checked boxes on a form, and [] provided minimal explanation for the limitations he assigned." (AR at 28). This criticism is perplexing, as the October 2018 examination findings provide far more than just checked boxes. (*See* AR at 742–45). Dr. Waldrip detailed the complaints Plaintiff presented with, summarized Plaintiff's medical history (specifically with respect to neck and back pain), noted Plaintiff's general appearance, reviewed Plaintiff's x-rays, and provided a full summary of his findings and recommendations. (*Id.*). In asserting that Dr. Waldrip merely checked boxes, the ALJ may

have been referring to Dr. Waldrip's November 2018 medical assessment. (AR at 746–47). That assessment made several conclusions related to Plaintiff's work-related limitations and indeed consisted of checked boxes with little explanation. (*Id.*). However, the November 2018 assessment came only weeks after the October 2018 examination; to the extent the November 2018 assessment lacks explanation, the October 2018 examination is supportive. And even if the November 2018 assessment were all that the ALJ had from Dr. Waldrip, the Ninth Circuit has specifically held that there is "no authority that a 'check-the-box' form is any less reliable than any other type of form." *Trevizo*, 871 F.3d at 677 n.4 (citing *Smolen*, 80 F.3d at 1288 (holding that, even where physician used check-the-box form and "did not provide comments to support his answers," the ALJ "still could not reject those responses without clear and convincing reasons for doing so")).

Finally, the ALJ found Dr. Waldrip's opinion unpersuasive because the limitations he found were "extreme" and "not substantially consistent with the record." (AR at 28). The ALJ referred to other examinations in the record that indicate normal neurological examination findings, normal gait, and normal muscle strength in the extremities. (*Id.*). According to the ALJ, these findings "substantially support that [Plaintiff] has a significant ability to sit, stand, walk, lift, carry, etc." (*Id.*). The Court finds this reasoning unpersuasive and well short of the substantial evidence required to discount a medical opinion. As addressed above in relation to Dr. Rakkar, an ALJ cannot merely cherry-pick other examination findings from the record that support his conclusion. The Court finds that the ALJ erred in discrediting Dr. Waldrip's opinion without providing substantial evidence in support.

### B.     Plaintiff's Subjective Symptom Testimony

Plaintiff argues that the ALJ erred in discounting Plaintiff's subjective symptom testimony. (Doc. 23 at 20–25). In evaluating a claimant's testimony, the ALJ is required to engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must decide whether the claimant has presented objective medical evidence of an impairment reasonably expected to produce some degree of the symptoms alleged. *Id.* If

so, and there is no evidence of malingering, the ALJ can reject the testimony regarding the severity of the symptoms only by providing "specific, clear, and convincing reasons for the rejection." *Id.* (citation and internal quotations omitted). The Ninth Circuit has held that "an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must *specifically identify* the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (emphasis added); *see also Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (an ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit [the] claimant's testimony."); *Smolen*, 80 F.3d at 1281 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.").

      Here, the ALJ recognized Plaintiff's reported symptoms as—among other things—an inability to focus, chronic fatigue, issues with standing or sitting for more than 20-30 minutes, chronic short-term memory loss, inability to drive long distances, difficulties learning and remembering new skills and tasks, mood swings, and difficulties with lifting, squatting, bending, reaching, walking, completing tasks, concentration, using his hands, and getting along with others. (AR at 20–21). In the RFC analysis, the ALJ also recognizes other symptoms such as knee pain, debilitating hand pain and poor grip strength, aches in various parts of his body, and debilitating physical pain related to his degenerative disc disease. (AR at 21–23). In the first step, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR at 21). However, at the second step, the ALJ concluded that Plaintiff's statements about the intensity, persistence, and limiting effects of those symptoms—*i.e.*, the severity of the symptoms—were "not entirely consistent with the medical evidence and other evidence in the record." (*Id.*).

Plaintiff argues that the ALJ erred by not providing "specific, clear, and convincing reasons" to reject Plaintiff's symptom testimony. (Doc. 23 at 20). According to Plaintiff, the ALJ instead offered only the vague assertion that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 21). The ALJ then "provided a discussion of the medical record, but failed to tie-in her characterization of the medical record with any specific symptom testimony." (*Id.* at 22). Defendant agrees, asserting that "the ALJ's evaluation of Plaintiff's subjective symptom statements in this case was deficient" and that "[f]urther explanation and development is needed by the ALJ to explain and support his finding as to Plaintiff's subjective complaints." (Doc. 27 at 6).

Given that the parties do not dispute the ALJ's error in evaluating Plaintiff's subjective symptom testimony, this Court will not go further in its analysis of the issue. This Court finds that the ALJ erred in discounting Plaintiff's symptom testimony without providing specific, clear, and convincing reasons to do so.

## IV.   REMAND FOR FURTHER PROCEEDINGS

This Court finds that the ALJ erred by (i) discrediting the medical opinions of Dr. Rakkar and Dr. Waldrip and (ii) discounting Plaintiff's symptom testimony without providing specific, clear, and convincing reasons to do so. The Court further finds that these errors were harmful. The only question remaining is whether this case should be remanded for further proceedings or for an award of benefits.

Once a court has determined an ALJ's decision contains harmful error, the decision whether to remand a case for additional evidence or for an award of benefits is within the discretion of the court. *Reddick v. Chater*, 157 F.3d 715, 728 (9th Cir. 1998); *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). "Remand for further proceedings is appropriate where there are outstanding issues that

must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find claimant disabled if all the evidence were properly evaluated." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (citing *Vasquez*, 572 F.3d at 593). Here, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated using the proper standards. Therefore, the Court, in its discretion, finds that a remand for further proceedings is appropriate.

Accordingly,

**IT IS ORDERED** that the March 18, 2020 final decision of the Commissioner of Social Security is **vacated and remanded** to the Commissioner of the Social Security Administration for further proceedings consistent with this order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 3rd day of March, 2022.

Honorable Steven P. Logan
United States District Judge